UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JERRY G. SHIRLEY AND NINA R. SHIRLEY                    PLAINTIFFS

v.                                        CIVIL ACTION NO. 3:11-CV-323-DW

UNITED STATES OF AMERICA                                DEFENDANT

## <u>MEMORANDUM OPINION</u>

This tax refund lawsuit raises novel and complex jurisdictional issues under the Tax Equity and Financial Security Act of 1982 (TEFRA),  Pub.L. No. 97–248, 96 Stat. 324,. *See* 26 U.S.C. §§6221-6231.  The suit also arises in what can only be described as a singularly unique set of factual circumstances.  Upon consideration of the parties' well-drafted briefs and oral argument, the Court concludes that it lacks subject matter jurisdiction under TEFRA to consider the Plaintiffs' refund lawsuit given the requirements of 26 U.S.C. §7422(h).[1] Fundamental to this conclusion is the view of the Court that the Plaintiffs cannot prove under the existing case law of the Sixth Circuit that Fountain Holding, LLC, filed the amended partnership tax return for the 2004 tax year that contains the net operating loss that the Plaintiffs now seek to carry back to their 2002 tax year return.


**The Material Facts.**

The Plaintiffs are a married couple, Jerry G. Shirley and his wife, Nina R. Shirley. The Shirleys are residents of Scott County, Kentucky.  Their lawsuit is an effort to recover an additional federal tax refund of $244,844 for the 2002 tax year.  They allege that this claimed

---

[1] **26 U.S.C.A. § 7422. (h)** provides that "no action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c)."

refund arises from the carry back of a 2004 net operating loss (NOL) incurred by a limited liability company, Fountain Holding, LLC, which is treated as a partnership for federal tax purposes.

Fountain Holding itself is comprised of four business trusts.  Each of the trusts is apparently named for a member of the Shirley family with the Steve Shirley Business Trust holding the largest ownership interest and designation as "tax matters partner" under 26 U.S.C. §6231(a)(7).[2]  In December of 2001, Jerry Shirley became the trustee, grantor and sole beneficiary of the Jerry Shirley Business Trust (Trust), then organized as a complex trust.  The Trust filed its first federal trust return, IRS Form 1041, in December of 2002, which resulted in a $39,023 overpayment that was applied to the Trust's 2003 estimated federal income tax.

The Shirleys filed their joint federal tax return for the 2002 tax year, IRS Form 1040, on March 14, 2003, and obtained an initial tax refund of $225,968 based on an overpayment of $256,024 of which $30,056 was applied to their own 2003 estimated federal income tax.  The following year, on Feb. 14, 2004, the Trust filed an amended IRS Form 1041X

---

[2]  **26 U.S.C. §6231(a)(7)** provides:

> (7)  **Tax matters partner**. - - The tax matters partner of any partnership is - -

> (A)  the general partner designated as the tax matters partner as provided in regulations, or

> (B)  if there is no general partner who has been so designated, the general partner having the largest provides interest in the partnership at the close of the taxable year involved (or, where there is more than 1 such partners, the 1 of such partners whose name would appear first in an alphabetical listing).

tax return to reflect its change from a complex trust to a grantor trust.  By this amended return the Trust requested that $95,600 in previously made payments on its original 2002 trust return be applied to Jerry Shirley as the beneficiary of the Trust.

The following month, on March 24, 2004, Jerry and Nina Shirley filed a first amended joint individual tax return, IRS form 1040X, for the 2002 tax year to reflect the changes that occurred when the Trust changed from a complex to a grantor trust.  On this first amended 2002 Form 1040X return, the Shirleys reflected an overpayment of $40,031 which they requested be applied to their 2003 estimated federal income tax.  On Aug. 11, 2005, the couple filed their joint individual federal income tax returns for the 2004 tax year showing a total overpayment of $254,137 to be refunded to them.

At this point, the tax history of the Shirleys and Fountain Holding, LLC, becomes more convoluted.  According to the Shirleys, on Jan. 9, 2006, Fountain Holding allegedly filed an amended 2004 partnership tax return, IRS Form 1065X, to claim a substantial net operating loss to be passed on to the four business trusts.  This 2004 amended partnership return, according to the Shirleys, was prepared by their CPA, the same individual who prepared their personal tax returns and the returns for the four trusts.  The Shirleys have provided the Government and the Court with a copy of the 2004 amended partnership return for Fountain Holding.

Unfortunately, the IRS has no record of ever having received this critical 2004 amended partnership tax return.  As the Government explained at oral argument, nowhere in the standard computer records of the IRS is there any indication that this particular amended partnership return was ever filed with the Service.  Yet, as noted by the Shirleys' counsel, as late as 2009, the Shirleys' accountant continued to send correspondence to the IRS to inquire about

3

the status of the Shirleys' NOL carry back refund claim and the amended partnership return.

No dispute exists that on Jan. 11, 2006, the Shirleys filed an amended joint individual federal income tax return, IRS Form 1040X, for the 2004 tax year to reflect additional losses reported to the Trust on the Trust's amended 2004 trust return. The amended 2004 individual tax return filed by the Shirleys identified a NOL of $668,625 for the 2004 tax year (the "2004 NOL carry back"). Two days later, on Jan. 13, 2006, the Shirleys filed a second, amended joint individual federal income tax return, IRS Form 1040X, for the 2002 tax year to reflect changes to income related to the 2004 NOL carry back. These changes reflect an additional overpayment by the Shirleys for the 2002 tax year of $244,844, the refund which the Shirleys now seek to obtain by their present lawsuit.

The following month on Feb. 26, 2006, the Trust filed an amended IRS Form 1041X for the 2004 tax year after it received an amended Schedule K-1 from Fountain Holding for the 2004 tax year. This amended K-1 reported the additional losses mentioned above. Five months later on July 31, 2006, the tax representative for the couple mailed to the IRS a copy of the amended 2004 trust return as shown by a copy of the certified mail receipt and return receipt. No certified mail receipt or return receipt exists for the amended 2004 partnership tax return of Fountain Holding claiming the NOL that is the ultimate basis for the Shirleys' $244,844 refund claim.

While the above events were occurring in 2006, the IRS began an audit of the amended 2002 individual tax return of the tax matters partner (TMP) for Fountain Holding, Steve Shirley. The audit resulted in a tax court proceeding. During the course of that proceeding, the IRS and Steve Shirley apparently came to a resolution of the dispute, which the

4

Plaintiffs maintain included a refund to Steve Shirley based on his proportional share of the 2004 net operating loss of Fountain Holding, which the Plaintiffs claim in their own proportionate share as the basis for their carry back on their 2002 tax year.

As fate would have it, little is known about what occurred during the tax court proceedings that involve Steve Shirley and the 2004 NOL of Fountain Holding. At most, it was suggested at oral argument that possibly, as part of a global settlement, the representatives of the IRS involved agreed to approve Steve Shirley's NOL carry back refund claim, perhaps based upon their examination of the apparently unfiled, amended 2004 partnership return for Fountain Holding. Such suggestion is only that - - a suggestion - - as the IRS is unable to locate the audit file for the Steve Shirley tax audit. Given the present posture of the case, which is before the Court on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court shall assume all presented facts in a fashion most favorable to the nonmoving party, the Plaintiffs.[3]

## Legal Analysis

Under the doctrine of sovereign immunity, lawsuits may not be brought against

---

[3]  The Plaintiffs have the burden to prove the subject matter jurisdiction of the Court in order to prevail. *See In re Kebe*, 444 B.R. 871, 875 (S.D. Ohio 2011) (citing *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)). A motion to dismiss for want of subject matter jurisdiction, will be granted only if, after taking as true all the facts alleged by the Plaintiff, the Court is without subject matter jurisdiction to hear the merits of the claim before it. *Official Pillotex, LLC v. Hollander Home Fashions Corp.*, 479 F. Supp. 2d 744, 748 (S.D. Ohio 2007). *See also, Butler v. McDonnell-Douglas Saudi Arabia Corp.*, 93 F.R.D. 384, 386 (S.D. Ohio 1981) ("In a motion to dismiss under Rule 12(b)(1), the court must accept as true all well-pleaded allegations of the complaint.") (citing *Amersbach v. City of Cleveland*, 598 F.2d 1033, 1034-35 (6th Cir. 1979)).

the United States unless it has waived immunity.  *United States v. Testan*, 424, U.S. 392, 399

(1976).  In the ordinary, nonpartnership tax refund case, the Government by statute has broadly

waived its immunity via 28 U.S.C. §1346(a)(1).[4]  *See United States v. Forma*, 42 F.3d 759, 763

(2nd Cir. 1994).  The broadly-worded language of §1346(a)(1), however, "must be read in

conformity with other statutory provisions that qualify a taxpayer's right to bring a refund suit

upon compliance with certain conditions."  *United States v. Dalm*, 494 U.S. 596, 601 (1990).

One specific statutory provision which qualifies the right of a taxpayer to bring a refund suit is

the previously cited 26 U.S.C. §7422(h), which states that "no action may be brought for a

refund attributable to partnership items, except as provided for in section 6228(b)[5] or section

---

[4]  Section 1346(a)(1) provides:

(a)    The district court shall have original jurisdiction, concurrent with the United
       States Court of Federal Claims, of:
              (1)    any civil action against the United States for
                     the recovery of any internal-revenue tax
                     alleged to have been erroneously or illegally
                     assessed or collected, or any penalty claimed
                     to have been collected without authority or
                     any sum alleged to have been excessive or
                     in any manner wrongly collected under the
                     internal-revenue laws.

28 U.S.C. 1346(a)(1).

[5]  **26 U.S.C. § 6228(b)** provides that -

**(b)    Other requests. - -**

**(1)    Notice providing that items become nonpartnership items**. - - If the Secretary
        mails to a partner, under subparagraph (A) of section 6231(b)(1) (relating to items
        ceasing to be partnership items), a notice that all partnership items of the partner
        for the partnership taxable year to which a timely request for adminsitrative
        adjustment under subsection (d) of section 6227 relates shall be treated as
        nonpartnership items - -

6

(A)     such request shall be treated as a claim for credit or refund of an overpayment attributable to nonpartnership items, and

(B)     the partner may bring an action under section 7422 with respect to such claim at any time within 2 years of the mailing of such notice.

**(2)     Other cases**. - -

**(A)     In general**. - - If the Secretary fails to allow any part of an administrative adjustment request filed under subsection (d) of section 6227 by a partner and paragraph (1) does not apply - -

(i)     such partner may pursuant to section 7422, begin a civil action for refund of any amount due by reason of the adjustments described in such part of the request, and

(ii)     on the beginning of such civil action, the partnership items of such partner for the partnership taxable year to which such part of such request relates shall be treated  as nonpartnership items for purposes of this subchapter.

**(B)     Period for filing petition. - -**

**(i)     In general.** - - An action may be begun under subparagraph (A) with respect to an administrative adjustment request for a partnerships taxable year only - -

(I)     after the expiration of 6 months from the date of filing of the request under section 6227, and

(II)     before the date which is 2 years after the date of filing of such request.

**(ii)     Extension of time.** - - The 2-year period described in subclause (II) of clause (i) shall be extended for such period as may be agreed upon in writing between the partner and the Secretary.

**(C)     Action barred after partnership proceeding has begun**. - - No petition may be filed under subparagraph (A) with respect to an administrative adjustment request for a partnership taxable year after the Secretary mails to the partnership a notice of the beginning of  partnership proceeding with respect to such year.

6230(c)."[6]

---

      **(D)**    **Failure by Secretary to issue timely notice of adjustment**. - - If the Secretary - -

          (i)    mails the notice referred to in subparagraph (C) before the expiration of the 2-year period referred to in clause (i)(II) of subparagraph (B), and

          (ii)    fails to mail a notice of final partnership administrative adjustment with respect to the partnership taxable year to which the request relates before the expiration of the period described in section 6299(a) (including any extension by agreement),

              subparagraph (C) shall cease to apply with respect to such request, and the 2-year period referred to in clause (i)(II) of subparagraph (B) shall not expire before the date 6 months after the expiration of the period described in section 6229(a) (including any extension by agreement).

     [6]  **26 U.S.C. § 6230(c)**  provides -

**(c)**    **Claims arising out of erroneous computations, etc**. - -

    **(1)**    **In general**. - - A partner may file a claim for refund on the grounds that - -

        (A)    the Secretary erroneously computed any computational adjustment necessary - -

          (i)    to make the partnership items on the partner's return consistent with the treatment of the partners items on the partnership return, or

          (ii)    to apply to the partner a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a).

        (B)    the Secretary failed to allow a credit or to make a refund to the partner in the amount of the overpayment attributable to the application to the partner of a settlement, a final partnership administrative adjustment, or the decision of a court in an action brought under section 6226 or section 6228(a), or

*Id.*

The upshot of the quoted language is that unless the Shirleys can carry their burden to prove that their present tax refund suit falls within either of the two statutory exceptions of §§6228(b) or 6230(c), or otherwise falls entirely outside of TEFRA and §7422(h), their refund claim will be held to be barred by the doctrine of sovereign immunity so that the Court will lack subject matter jurisdiction.  *See Greer v. United States*, Case No. 93-CV-194, 2004 WL 1192525 at *4 (E.D. Ky. Apr. 15, 2004) (citing *Williams v. United States*, 1997 WL 375209 (E.D. Ky. 1997), *affirmed*, 162 F.3d 30, 1998 WL 537579 (6th Cir. 1998)).

---

(C)     the Secretary erroneously imposed any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item.

**(2)     Time for filing claim. - -**

**(A)     Under paragraph (1)(A) or (C).** - - Any claim under subparagraph (A) or (C) of paragraph (1) shall be filed within 6 months after the day on which the Secretary mails the notice of computational adjustment to the partner.

**(B)     Under paragraph (1)(B).** - - Any claim under paragraph (1)(B) shall be filed within 2 years after whichever of the following days is appropriate:

(i)     the day on which the settlement is entered into,

(ii)     the day on which the period during which an action may be brought under section 6226 with respect to the final partnership administrative adjustment expires or

(iii)     the day on which the decision of the court becomes final.

**(3)     Suit if claim not allowed**. - - If any portion of a claim under paragraph (1) is not allowed, the partner may bring suit with respect to such portion within the period specified in subsection (a) of section 6532 (relating to periods of limitations on refund suits).

To better understand the nature of the sovereign immunity challenge presented to the Shirleys, one must first understand the tax treatment of partnerships both before and after 1982, the year in which TEFRA became law.  This task, as least insofar as it relates to the provisions of TEFRA, is perhaps no easy goal, given the apt description of TEFRA as a "statutory labyrinth."  *See Prati v. United States*, 81 Fed. Cl. 422, 427 (2008) (Block, J.).  Nonetheless, such an explanation of the pre- and post-TEFRA treatment of partnership taxation is important to the proper outcome of this case.

Perhaps the most fundamental principle in this area of taxation is that a partnership itself is not liable at the entity level for the payment of federal income taxes.  See 26 U.S.C. §701.  *See Desmet v. C.I.R.,* 581 F.3d 297, 301 (6th Cir. 2009)(explaining partnership taxation fundamentals under TEFRA).  Instead, partnerships file what is known as an information return, an IRS Form 1065, each year to report items of income, deduction and credit. See 26 U.S.C. §6031.  These items of income, deduction and credit are then allocated to the partners of the partnership who must bear the tax consequences, favorable or unfavorable, for them.  See 26 U.S.C. §702.  The allocation to each partner is made via a Schedule K-1 that accompanies the partnership's IRS Form 1065 tax return.  The affected partners then report their distributive shares of these partnership items on their individual federal tax returns.  *See gen., Crnkovich v. United States*, 41 Fed. Cl. 168, 170 (1998).

Until 1982, any disagreements about this "flow through" to the partners of income and expenses from the partnership level to the individual partner level were handled by administrative and judicial proceedings that were conducted at the level of the individual partner. *Monti*, 223 F.3d at 78 (citing *Chimdlo v. Comm'r*, 177 F.3d 119, 121 (2nd Cir. 1999)).  In other

10

words, "If the IRS took issue with the partnership's books or returns, it addressed the issue with each partner individually." *Id*. Unfortunately, this scattershot approach proved to be highly inefficient and on occasion led to inconsistent results among partners. *Monti*, 223 F.3d at 78. *See also, Crnkovich*, 41 Fed. Cl. at 170 ("Through tax year 1982 ... administrative and judicial proceedings regarding partnership items were conducted at the level of the individual partner. Hence, the IRS was forced to conduct distinct investigations for and, where appropriate, enter separate settlement agreements with each individual partner.").

In 1982, Congress enacted TEFRA, 26 U.S.C. §§6221-6233, to cut short the duplicative litigation created by this individual partner level approach to dispute resolution involving the tax treatment of partnerships. *Rigas v. United States*, Case No. H-09-3770, 2011 WL 165579 at *6-7 (S.D. Tex. May 2, 2011). *See also, Desmet*, 581 F.3d at 302("The key change wrought by TEFRA is that tax treatment of all so-called "partnership items" must be determined at the partnership level, not at the partner level); *McGann v. United States*, 76 Fed. Cl. 745, 750 (2007) ("Under TEFRA procedures, 'partnership items' are resolved at a partnership level proceeding and, with limited exceptions, may not be contested in a refund suit.") (citing 26 U.S.C. §§6221, 7422(h)). *See also, Prochrenko v. United States*, 243 F.3d 1359, 1363 (Fed, Cir. 2001)).

TEFRA therefore creates a unified procedure to determine the treatment of partnership transactions. *Id*. Its provisions require that "the tax treatment of any partnership item shall be determined at the partnership level" rather than separately at the partner level. *See Desmet*, 581 F.3d at 302; *In re Crowell*, 305 F.3d 474, 478 (6th Cir. 2004). A partnership item is

11

statutorily defined by 26 U.S.C. §6231(a)(3)[7] and by regulation to include those items that are more appropriately determined at the partnership level including gains, losses, deductions and credits of a partnership.  See 26 C.F.R. §301.6231(a)(3)-1.  *See also, Monti*, 223 F.3d at 79 ("Individual taxpayers still pay the relevant taxes - - the partnership does not pay income tax - - but *determinations* as to the amount of tax attributable to the partnership are made at the partnership level.") (original emphasis) (citing *Randell v. United States*, 64 F.3d 101, 103-04 (2nd Cir. 1995), *cert. denied*, 519 U.S. 817 (1996)).

   In the ordinary course of TEFRA proceedings, two ways exist to adjust a partnership item.  *Rigas*, 2011 WL 1655579 at *7 (citing 26 U.S.C. §§6223, 6225). *See also, Desmet,* 581 F.3d at 302-03. The IRS may initiate administrative partnership proceedings that result in the issuance of a final partnership administrative adjustment (FPAA).  *Id.*  Alternatively, the taxpayer may request adjustment of a partnership item by filing an administrative adjustment request (AAR or RAA).  *Id.*  An AAR may be filed either by an individual partner or by the partnership itself.  *Id.* (citing 26 U.S.C. §§6227(a), (c)).  No matter which alternative course is pursued, an AAR filed by a partner and an AAR filed by a partnership itself must be submitted within three years after the partnership return for the year in question has been filed.  *Id.* (citing 26 U.S.C. §6227(a)(1)(A)).

   As *Rigas* continues to explain the ordinary TEFRA procedures:

---

[7] **26 U.S.C.A. § 6231(a)(3)** provides that -

**Partnership item**. - - The term "partnership Item" means, with respect to a partnership, any item required to be taken into account for the partnership's taxable year under an provision of subtitle A to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, such item is more appropriately determined at the partnership level than at the partner level.

If an individual partner files an AAR, the IRS may do one of the following: (1) process the AAR in the same manner as a claim for credit or refund with respect to items which are not partnership items; (2) assess any additional tax that would result from the requested adjustment; (3) mail to the partner a notice that all partnership items of the partner for such tax year shall be treated as nonpartnership items; or (4) conduct a partnership proceeding. *Id.* §6227(d).

If a partnership, through its tax matters partner (TMP), files an AAR, the IRS may treat the AAR as a substituted return in which only clerical or mathematical errors have been corrected. *Id.* §6227(c)(1).  If the IRS decides not to treat the AAR as a substituted return, it may do one of the following:  (1) without conducting a proceeding, allow or make to all partners the credits or refunds arising from the requested adjustments; (2) conduct a partnership proceeding; or (3) take no action. *Id.* §6227(c)(2).

Section 6228 allows partnerships and partners that have filed AARs to seek further review if the IRS fails to allow part or all of the AAR.  Importantly, the statute distinguishes between the type of review that may be sought.  In the case of a partnership-filed AAR, the TMP may file "a petition for an adjustment" if the IRS fails to allows any part of the AAR.  26 U.S.C. §6228(a).  In the case of an AAR filed by an individual partner, the partner may "begin a civil action for refund of any amount due by reason of the adjustments described" in the disallowed AAR. *Id.* §6228(b)(2)(A)(i).  Once the partner files the civil action, the partnership items listed on the disallowed AAR "shall be treated as nonpartnership items for the purposes of [TEFRA]." *Id.* §6228(b)(2)(A)(ii); *see also*, 26 U.S.C. §6231(b)(1)(B).  A partner who wishes to file a civil action under §6228(b) must do so no sooner than six months after the filing of the AAR and no later than two years after the AARs filing.  26 U.S.C. §6228(b)(2)(B)(i).

*Rigas*, 2011 WL 1655579 at *7.

Here, the Shirleys do not rely upon the exception contained in 26 U.S.C. §6228(b) in their efforts to establish the subject matter jurisdiction of the Court.  Rather, the efforts of the Shirleys focus at least initially on the second exception of 26 U.S.C. §6230(c).  As this statute has been described, "Actions under §6230(c) are ... merely to enforce previous determinations by

13

settlement, FPAA or court decisions." *Williams*, 1997 WL 375209 at *6.

When a partner brings an erroneous computation claim against the Commissioner, it is §6230(c)(1)(A) that provides the federal courts with jurisdiction. The Shirleys, however, do not claim an erroneous computation under this particular statutory subsection. Instead, their response to the motion to dismiss focuses on §6230(c)(1)(B), which applies when the Service fails to allow a credit or to make a refund to a partner in the amount of an overpayment that is attributable to the application of the partner of a settlement, a FPAA, or the decision of a court in an action brought under §§6226 or 6228(a). *Hamdan v. United States*, Case No. 02-384T, 2009 WL 612326 at *5 (Fed. Cl. Mar. 9, 2009).

A helpful explanation of §6230(c)(1)(B) is set out in *Schell v. United States*, 589 F.3d 1378, 1383 (Fed. Cir. 2009), *cert. denied*, 131 S. Ct. 346 (2010). As *Schell* explains:

> When a partner chooses to settle his individual tax liability with the IRS, the settling individual's partnership items are converted to non-partnership items, but only when the IRS enters into a settlement agreement with the partner *with respect to such items*. *See* [26 U.S.C.] §6231(b)(1)(C) ("[T]he partnership items of a partner for a partnership taxable year shall become non-partnership items as of the date ... the Secretary or the Attorney General (or his delegate) enters into a settlement agreement with the partner with respect to such items....") (emphasis added). Thus, when a partner files an action for a refund attributable to partnership items that have been converted through a settlement agreement, the jurisdictional bar of §7422(h) no longer applies.

*Id*. at 1383.

Here, the Shirleys focus on that portion of §6230(c)(1)(B) that speaks to a refund to a partner in an amount attributable to "a" settlement, which they interpret to mean a settlement with *any* partner to the partnership such that the July 2007 settlement with Steve Shirley would satisfy the provisions of §6230(c)(1)(B). In their view, Steve Shirley, as TMP of Fountain

14

Holding, reached a settlement agreement in the course of his tax court proceedings under which the service allowed him a significant portion of the 2004 NOL of Fountain Holding consistent with his portion that the company claimed on its amended 2004 IRS Form 1065X.

From this analytical point of departure, the Shirleys in reliance on §6230(c)(1)(B) now insist that they are entitled to consistent treatment with the July 2007 settlement obtained by Steve Shirley, so that they too may obtain a refund of their proportional share of the 2004 NOL carry back on their 2002 federal tax return.  As for whether they filed a sufficient and timely refund claim for consistent treatment with Steve Shirley's 2007 settlement, the Shirleys maintain that their second amended IRS form 1040X filed on Jan. 13, 2006, some 18 months *before* the settlement is the substantial equivalent of such a refund claim, and therefore sufficient to put the IRS on notice, despite the language of the statute under §6230(c)(2)(B) which explicitly states that such a claim "shall be filed within two years *after* ... the day on which the settlement is entered into...."  26 U.S.C. §6230(c)(2)(B)(i)(emphasis added).  *See gen. Whittington v. United States*, 380 F. Supp.2d 806, 812-13 (S.D. Tex. 2005) (discussing the informal claim doctrine in the context of 26 U.S.C. §6230(c)(2)(B), where mere correspondence by taxpayer's counsel was held sufficient to satisfy the requirements of the statute, when filed within the statutory period).

Two final statutory provisions of TEFRA merit general discussion due to the reliance of the Shirleys on their provisions.  The first such TEFRA statute is 26 U.S.C. §6223(a) and (e).[8]  Under §6223(a), a statutory duty is placed on the IRS to provide partners with notice of

---

[8]  **26 U.S.C.A. § 6223(a)** provides that **-**

**(a)**     **Secretary must give partners notice of beginning and completion of administrative proceedings**. - - The Secretary shall mail to each partner whose name and address is furnished to the Secretary notice of - -

15

the beginning and completion of administrative proceedings at the partnership level with respect to a partnership item.  See 26 U.S.C. §6223(a)(1), (2).  If the IRS fails to mail to each known partner notice within the statutorily-required time, and the administrative proceeding has concluded, along with the time for seeking further review, then under 26 U.S.C. §6223(e)(2) the affected partner may elect to have the settlement apply to the affected partner.  26 U.S.C. §6223(e)(2).  If the partner does not make this election, the partnership items of the partner for the partnership taxable year to which the proceeding relates will be treated as being nonpartnership items.  *Id*.  Either of these alternatives would satisfy the Shirleys' jurisdictional burden in the present circumstances.  *See Camacho v. United States*, 195 B.R. 114, 116 n. 1 (D. Alas. 1996) (discussing the operation of §6223(e)); *Walthall v. United States*, 911 F.Supp. 1275, 1280 n.8 (D. AK. 1995), *affirmed*, 131 F.3d 1289 (9th Cir. 1997) (discussing the consequences that follow when the IRS fails or unduly delays in sending notice contrary to §6223(a)).

> To make 26 U.S.C. §6223(a) and (e) apply, however, the Shirleys are forced to perform the following statutory gymnastics. First, they reason that the amended 2002 Form 1040X filed on behalf of TMP Steve Shirley is the substantial equivalent of an AAR for the purpose of 26 U.S.C. §6227, which under subsection (c) empowers a TMP to file a request for administrative adjustment and to ask that the treatment shown on the request be substituted for the treatment of the partnership items on the partnership return to which the request relates.  See

---

(1)     the beginning of an administrative proceeding at the partnership level with respect to a partnership item, and

(2)     the final partnership administrative adjustment resulting from any such proceeding.

16

26 U.S.C. §6227(c)(2).[9]  If one assumes, for the purpose of argument, that Steve Shirley's

amended individual 2002 federal tax return is an AAR on behalf of Fountain Holding under 26

U.S.C. §6227(c)(2), then the IRS has three options - - it may make a refund to all partners arising

from the requested adjustments, conduct a partnership proceeding, or do nothing at all.  See 26

U.S.C. §6227(c)(2)(A)(i)-(iii).

Because the IRS made a refund to Steve Shirley, whose amended IRS Form

1040X was the equivalent of an AAR for the purpose of §6227(c)(2), then in the view of the

Shirleys, the IRS either took action without conducting a partnership proceeding or,

alternatively, it conducted an informal partnership proceeding.  If no partnership proceeding

under §6227(c)(2)(A)(i) was held before it acted on Steve Shirley's refund request, then the

Service in the view of the Shirleys failed to make the necessary computational adjustments,

---

[9] **(c)  Requests by tax matters partner on behalf of partnership. - -**

**\* \* \* \***

**(2)  Requests not treated as substituted returns. - -**

> **(A)  In general. - -** If the tax matters partner files an administrative adjustment request on behalf of the partnership which is not treated as a substituted return under paragraph (1), the Secretary may, with respect to all or any part of the requested adjustment - -
>
>> **(i)**  without conducting any proceeding, allow or make to all partners the credits or refunds arising from the requested adjustments,
>> **(ii)**  conduct a partnership proceeding under this subchapter, or
>> **(iii)**  take no action on the request.
>
> **(B)  Exception. - -** Clause (i) of subparagraph (A) shall not apply with respect to a partner after the day on which the partnership items become nonpartnership items by reason of 1 or more of the events described in subsection (b) of section 6231.

17

thereby allowing them to file a refund claim based on the 2007 settlement, which their second amended 1040X for the 2002 tax year is the substantial equivalent of just such a refund claim. Since the IRS has never, to date, notified the Shirleys that it disallowed their refund claim, then under 26 U.S.C. §6532(a)(1),[10] the time for filing their current tax refund lawsuit remains open.

Alternatively, if the IRS did conduct an informal partnership proceeding based on the AAR of the TMP Steve Shirley, it failed to provide the Shirleys notice of the beginning or of the final partnership proceeding as required by 26 U.S.C. §6223(a). The Service therefore must offer them consistent settlement terms to those of the settlement, or the Shirleys may elect to treat the 2004 NOL carry back refund claim as being a nonpartnership item not subject to TEFRA and §7422(h). Either of these two alternatives, based on the above-cited statutes, favorably resolves the Shirleys' subject matter jurisdiction dilemma, either because their refund claim is timely or the failure of the Service to give notice transformed the claim into a nonpartnership item.

The final of the two statutes that merits mention is 26 U.S.C. §6224(c)(2),[11] which

---

[10] **26 U.S.C. § 6532(a)(1)** provides that:

**(a) Suits by taxpayers for refund**.--

**(1) General rule**.--No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

[11] **26 U.S.C.A. § 6224(c)(2)** provides that -

relates to settlement agreements and the right of partners to enter into consistent agreements. See 26 U.S.C. §6224(c)(2).  Under subsection (c)(2), if the Service enters into a settlement agreement with any partner with respect to a partnership item for any partnership tax year, the Service is required by statute to offer to any other partner who so requests settlement terms for the partnership year which are consistent with those contained in the settlement agreement.

By regulation, 26 C.F.R. §301.6224(c)-(3)(c), any partner may make a written request to demand consistent settlement terms within 150 days after the notice of the final partnership administrative adjustment (FPAA) is mailed to the TMP, or alternatively, within 60 days after the settlement itself is achieved.  *Id*.  Neither 26 U.S.C. §6224(c)(2) nor §301.6224(c)

---

(c)    **Settlement agreement**. - - In the absence of a showing of fraud, malfeasance, or misrepresentation of fact - -

  (1)    **Binds all parties**. - - A settlement agreement between the Secretary or the Attorney General (or his delegate) and 1 or more partners in a partnership with respect to the determination of partnership items for any partnership taxable year shall (except as otherwise provided in such agreement) be binding on all parties to such agreement with respect to the determination of partnership items for such partnership taxable year.  An indirect partner is bound by any such agreement entered into by the pass-thru partner unless the indirect partner has been identified as provided in section 6223(c)(3).

  (2)    **Other partners have right to enter into consistent agreement**. - - If the Secretary or the Attorney General (or his delegate) enters into a settlement agreement with any partner with respect to partnership items for any partnership taxable year, the Secretary or the Attorney General (or his delegate) shall offer to any other partner who so requests settlement terms for the partnership taxable year which are consistent with those contained in such settlement agreement. Except in the case of an election under paragraph (2) or (3) of section 6223(e) to have a settlement agreement described in this paragraph apply, this paragraph shall apply with respect to a settlement agreement entered into with a partner before notice of a final partnership administrative adjustment is mailed to the tax matters partner only if such other partner makes the request before the expiration of 150 days after the day on which such notice is mailed to the tax mattes partner.

speaks to whether the IRS has a duty to inform all the partners of a partnership of its settlement with the original partner; nor do the same statutes and regulations address the effect of the failure of the IRS to give such notice.  The Shirleys merely infer the existence of such a duty on the IRS and, based on *Monti v. United States*, 223 F.3d 76 (2nd Cir. 2000), maintain that the question of whether they timely received adequate notice of the settlement is *not* a partnership item subject to TEFRA, but rather is a partner-level issue that may be addressed by the Court in the current lawsuit.[12]

**The Amended 2004 Partnership Return.**

The several TEFRA statutes discussed above are but a small portion of the full provisions of TEFRA.  Nonetheless, the cited statutory provisions of §§ 6223, 6224, 6227, 6228 and 6230 contain sufficient complexity of themselves to challenge even experienced tax law practitioners, much less those who are professionally acquainted with TEFRA only in passing.  Beneath this complexity, however, looms one overwhelming consideration that in the mind of the Court turns the entire case, irrespective of the subtleties of any single statutory provision.

---

[12]  For federal court decisions that discuss section 6224(c), *see Rigas*, 486 Fed. Appx. at **8 (explaining based on the language of section 6224(c) that "it is apparent when this section is considered as a whole that the settlement agreements referenced in subsection (c) are made with individual partners after an administrative proceeding is initiated to resolve partnership-level items.  Because no partnership-level administration proceeding occurred, the plaintiffs could not prevail on their consistent-treatment claim); *Prochroenko*, 243 F.3d at 1362-63 (Taxpayer's claimed right to consistent settlement under section 6224(c)(2) was an issue entirely dependent on the taxpayer's own unique factual circumstances and therefore was not the type of issue "more appropriately determined at the partnership level."); *Slovacek v. United States*, 40 Fed. Cl. 828, 833-34 (1998) ("Both the legislative history and plain language of TEFRA only require consistency in the treatment of partnership items.  Once partnership items are converted into nonpartnership items, the TEFRA provisions requiring consistent treatment of partnership items no longer apply.").

The Court brought this consideration to the attention of the parties  at the outset of oral argument .  As the Court then noted, the IRS has no record that Fountain Holding filed an amended 2004 partnership return, Form 1065X, containing the crucial net operating loss that Jerry and Nina Shirley now seek to carry back to their 2002 tax year by way of their second amended 2002 tax return.  The Shirleys themselves have no certified mail or registered mail receipt that would satisfy the statutory exception arising under 26 U.S.C. §7502(c) to the "physical delivery rule" created by *United States v. Lambardo*, 241 U.S. 73, 76 (1916) wherein the U.S. Supreme Court was faced with the task of interpreting when a claim for refund has been "filed" under §7422(a).

The *Lambardo* court concluded that a claim for a refund is not duly filed until "the document is delivered and received."  *Id*. at 76; *Miller v. United States*, 784 F.2d 728, 730 (6th Cir. 1986) (discussing *Lambardo* and 26 U.S.C. §7502).  Despite the creation of the physical delivery rule in *Lambardo*, certain federal courts created by common law  an exception whereby "'a timely and accurate mailing raises a rebuttable presumption that the mailed material was received and thereby filed.'"  *Miller*, 784 F.2d at 730 (quoting *In re Nimz Transport, Inc.*, 505 F.2d 177, 179 (7th Cir. 1974)).

In 1954, Congress added §7502 to the tax code to address the perceived inequity arising from problems with mail delivery in certain parts of the country.  *Schentur v. United States*, Case No. 92-3605, 1993 WL 330640 at *4 (6th Cir. 1993) (citing *Miller*, 784 F.2d at 730).  Section 7502 creates two statutory exceptions to the physical delivery rule of *Lambardo*.  As *Schentur* describes the two exceptions,

> First, if any [tax] return is required to be filed by a certain date,
> and is received after that date, the date of the United States

21

postmark shall be deemed the date of delivery.  Second, if a document is sent by registered or certified mail, such registration or certification shall be *prima facie* evidence that the document was delivered on the date of the postmark.

*Schentur*, 1993 WL 330640 at *4.[13]

Over the years a question arose, as it does now, whether the two statutory exceptions provided in §7502(c) are the only means by which a taxpayer may establish that a claim for refund has been filed in those instances in which: (1) the IRS has either lost the envelope that contains the critical postmark for a document that was delivered to the Service allegedly beyond the applicable deadline for filing; or (2) in those cases in which the claim for refund allegedly was never received by the Service, despite the adamant contention of the

---

[13]  Subsection (c) of § 7502 provides as follows:

**(c) Registered and certified mailing; electronic filing. - -**
   **(1) Registered mail. - -**  For purposes of this section, if any return, claim, statement or other document, or payment, is sent by United States registered mail - -
      **(A)** such registration shall be *prima facie* evidence that the return, claim, statement, or other document was delivered to the agency, officer, or office to which addressed; and
      **(B)** the date of registration shall be deemed the postmarked date.
   **(2) Certified mail; electronic filing. - -** The Secretary is authorized to provide by regulations the extent to which provision of paragraph (1) with respect to *prima facie* evidence of delivery and the postmark date shall apply to certified mail and electronic filing.

26 U.S.C. § 7502(c)(1) and (2).
   By federal regulation, 26 C.F.R. § 301.7502-1(c)(2), the Secretary of the Treasury has provided that if a document "is sent by U.S. certified mail and the sender's receipt is postmarked by the postal employee to whom the document ... is presented, the date of the U.S. postmark on the receipt is treated as the postmark date of the document."  *Id.*

22

taxpayer that the appropriate form was prepared and mailed to the Service, albeit by regular mail rather than certified or registered mail.

Unfortunately for the Shirleys, the Sixth Circuit and various district courts within the Sixth Circuit have held repeatedly that only the statutorily provided means of §7502(c) are available to satisfy the filing requirement.[14]   Indeed, both the federal appellate and district courts have so held in this circuit even in the face of compelling extrinsic evidence, and even where the result - - the inevitable dismissal of the taxpayer's refund claim - - has been judicially characterized as being "harsh," "unfair" or otherwise a "gross injustice." *See Surowka v. United States*, 909 F.2d 148, 150 (6th Cir. 1990) ("While the result may be harsh, since plaintiffs did not send their return registered, they are precluded from setting forth circumstantial proof that their 1977 tax return was filed."); *Carroll v. Comm'r*, 71 F.3d 1228, 1233 (6th Cir. 1995) (rejecting "compelling" extrinsic evidence of mailing while distinguishing the more liberal approach taken by the Eighth Circuit in *Estate of Wood v. Comm'r*, 92 T.C. 793, 798-99 (1989) (*en banc*), *affirmed* 909 F.2d 1155 (8th Cir. 1990), and that of the Ninth Circuit in *Anderson v. United States*, 966 F.2d 487, 491 (9th Cir. 1992); *United States v. Cope*, 680 F. Supp. 912, 917-919 (W.D. Ky. 1987) (applying *Miller* to dismiss taxpayer Croley's claim for want of jurisdiction despite "persuasive extrinsic evidence of her claim" and the court's protest that "the provisions of 26 U.S.C. §7502 *have produced a gross injustice to Croley in this case*")(original emphasis); *BMC Bankcorp v. IRS*, Case No. 93-0174-P(H), 1994 WL 500801 (W.D. Ky. 1994)("The rule

---

[14]   *See gen., Stocker II v. United States*,__F.3d__, 2013 WL 174227 (6th Cir., Jan. 17, 2013); *Carroll v. Comm'r*, 71 F.3d 1228 (6th Cir. 1995); *Schentur v. United States*, Case No. 92-3605, 1993 WL 330640 (6th Cir. 1993); *Goldcorp v. United States*, Case No. 00-75043, 2002 WL 551042 (E.D. Mich. Mar. 27, 2002); *St. Laurent v. IRS*, Case No. G89-40380CA, 1990 WL 106746 (W.D. Mich. May 22, 1990).

[of §7502] which this court follows no doubt is unfair in individual circumstances.  Perhaps this circumstance is one.  But the Sixth Circuit has not suggested the possibility of any exceptions to its rule.  And, although unfairness may result from time to time, the statute promotes a rational policy of strict compliance.").

If any lingering doubt remains that §7502(c) does not permit the continued application of the common law mailbox rule, and is not a "safe harbor" provision, that doubt has been extinguished recently by the decision of a three-member panel of the Sixth Circuit rendered on Jan. 17, 2013, in *Stocker v. United States*, __F.3d__, 2013 WL 174227 (6th Cir., Jan. 17, 2013).  In *Stocker*, the taxpayers, Robert and Laurel Stocker, raised the question of "what sort of proof the plaintiff/appellant taxpayers ... may introduce in order to demonstrate the timely filing of a tax return in which they sought a federal tax refund of just over $64,000."  *Stocker*, 2013 WL 174227 at *1.

The Stockers contended that "the pertinent tax code provisions and case law leave room for proof of timely mailing of a tax return through taxpayer testimony and circumstantial evidence."  *Id*.  The district court rejected this argument based on *Miller* and the above-cited decisions, despite evidence presented by the Stockers' tax preparer, Michael Flintoff, and his office manager, Karrin Fennell.  Flintoff prepared the disputed 2003 federal and state amended tax returns of the Stockers, which based on an extension, had to be filed within three years of Oct. 15, 2004, the date of the filing of their initial 2003 return, or no later than Oct. 15, 2007.

Evidence showed that office manager Fennell prepared postage prepaid, certified mail, return receipt requested envelopes for the Stockers' amended 2003 and 2006 federal and state tax returns, but mistakenly retained the customer copies of the certified mail receipts for the

24

Stockers' 2003 amended returns, rather than giving them to Mr. Stocker so that he could present them at the post office as he mailed all four returns on Oct. 15, 2007.  *Id*. at *1-2.  Stocker testified that he received all four tax returns and the accompanying envelopes and timely mailed all four returns from the post office on the day he received them.  He was not able, however, to get date-stamped receipts for the amended 2003 tax returns due to Fennell's failure to give him the customer copies of the certified mail receipts.

State records confirmed that the Stockers' amended 2003 state tax returns and 2006 state returns, both mailed by Mr. Stocker on Oct. 15, 2007, were timely received by the Michigan Department of Treasury, which issued the Stockers a refund on their amended 2003 state return.  *Id*. at *2.  Although the IRS acknowledged the timely receipt of the Stockers' federal 2006 tax return, the IRS claimed that it did not receive the amended 2003 federal tax return until Oct. 25, 2007, ten days after the date that Mr. Stocker testified he mailed it.  *Id*. Further, the IRS records reflected that the envelope which contained the Stockers' amended 2003 federal return bore the postage mark date of Oct. 19, 2007, based on the date-stamp imposed on the face of the Stockers' amended 2003 return by an IRS clerk responsible for opening and sorting tax returns.  *Id*. at *2 n.2.  The IRS did not retain the envelope in which the Stockers' amended 2003 return was sent, however, and the portion of the return-receipt card to be completed by the recipient upon delivery to the IRS had been left blank when it was returned to tax preparer Flintoff.

Based on the amended 2003 tax return's untimely postmark beyond Oct. 15, 2007, the IRS sent the Stockers a notice that it disallowed their refund claim for the 2003 tax year.  *Id*.  The IRS also denied the written request by Flintoff to reconsider its rejection of the

25

Stockers' claim.  The end result was that the Stockers presented evidence that all of the other three returns that were mailed contemporaneously with the amended 2003 federal tax return were deemed by the appropriate federal or state tax authorities to be timely sent and received.  *Id.* at *3.  Nonetheless, the Government, similar to the present case, moved to dismiss the Stockers' tax refund lawsuit for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) due to the Government's position that the suit was barred by sovereign immunity due to the failure of the Stockers to file their amended 2003 return within the three-year period for doing so.  *Id.*

        The district court agreed with the Government based on the above-cited case law of the Sixth Circuit in interpreting 26 U.S.C. §7502(c).  The three-member panel of the Sixth Circuit likewise rejected the Stockers' position based on their failure to secure a date-stamped receipt to corroborate their assertion that they timely delivered the amended 2003 return to the post office on Oct. 15, 2007, as required by §7502(c)(2).  *Id.* at *4-5 (citing *Miller*, 784 F.2d at 730).  In this regard, the panel explained:

> [T]he Stockers insist that the two methods set forth in §7502 for establishing timely filing are not the sole evidence of proof for overcoming the physical delivery rule, and that taxpayers remain free to prove timely filing through other means.  This contention, however, runs directly counter to our decision in *Miller*, in which we expressly held that "the only exceptions to the physical delivery rule available to taxpayers are the two set out in section 7502."  [*Miller*], 784 F.2d at 731.  In that case, the plaintiff sought to rely on an affidavit from his attorney stating that he had timely sent a claim for a refund by ordinary mail, but the IRS had no record of ever receiving this claim.  Because the plaintiff could not produce a postmarked envelope that could confirm the timely filing of his claim, and because this claim had been sent by ordinary rather than registered or certified mail, we found that "the exceptions in section 7502 do not apply to the filing of [the plaintiff's] refund claim."  *Id.* at 730.  We then rejected the plaintiff's contention that the two exceptions set forth in §7502 merely created "safe harbor[s]" to which a taxpayer could appeal

26

> "without question, while not barring him from relying on other
> exceptions created by the courts." *Id.*  Instead, we elected to
> follow the decisions of other courts holding that the "exceptions
> embodied in [§7502] [a]re exclusive and complete."  *Id.* at 731
> (following *Deutsch v. Comm'r*, 599 F.2d 44, 46 (2nd Cir. 1979),
> and other cases cited therein).

*Stocker* 2013 WL 174227 at *5.

The panel in *Stocker* then continued in a footnote to concede that other federal

circuits had separately concluded that §7502 "does not altogether displace the common-place

rules, such as the mailbox rule, that the courts have invoked to determine whether a tax return or

other document has been timely filed with the IRS."  *Id.* at n.5 (citing *Philadelphia Marine*

*Trade Assoc. - - Int'l Longshoremen's Assoc. Pension Fund v. Comm'r*, 523 F.3d 140, 150 (3rd

Cir. 2008) and *Anderson v. United States*, 966 F.2d 487, 491 (9th Cir. 1992).  Despite the

*Philadelphia Trade Assoc.* and the *Anderson* decisions, the panel explained that "we, of course,

are bound to adhere to this Circuit's resolution of this issue in the published *Miller* decision."  *Id.*

(citing *Carroll v. Comm'r*, 71 F.3d 1228, 1232 (6th Cir. 1995) (expressing reservations about the

ruling in *Miller,* but confirming that it "remain[s] good law in the Sixth Circuit").

After rejecting several other arguments offered by the Stockers and reaffirming

both *Miller* and *Schentur*, the panel in *Stocker* ultimately reached its holding stating:

> We affirm the district court's finding that the Stockers' extrinsic
> evidence had no role to play in determining whether they could
> satisfy either of §7502's two exclusive exceptions to the physical
> delivery rule, and we further affirm the lower court's ruling that
> neither of these exceptions is available here to establish the timely
> filing of the Stockers' amended 2003 federal tax return.

*Id.* at *7.

The *Stocker* decision leaves no room for any remaining debate.  The IRS has

27

advised that the amended 2004 partnership return of Fountain Holding has not been filed.  No

evidence can be found in the computer records of the IRS of this partnership tax return. The

Shirleys do not meet either exception of §7502(c)(2), and no extrinsic evidence can be offered in

substitution thereof.  What this means in practical terms is that the very partnership return on

which the Shirleys base their $244,844 refund claim for a carry back of a net operating loss

incurred by Fountain Holding in 2004 was never filed with the Service.  The resulting

consequences of this failure of Fountain Holding to file an amended 2004 partnership Form

1065X return are fatal to virtually all of the arguments raised by the Shirleys in this case. Indeed,

at oral argument, counsel for the Shirleys tactfully conceded in understated fashion that if the

filing of the amended 2004 partnership return of Fountain Holding could not be shown, the

Shirleys would have at best "limited legal options."

   The consequences that flow from the failure of the Shirleys to carry their burden

of proof under 26 U.S.C. §7502 are both immediate and dramatic.  Their legal options are indeed

severely limited, as the following review of their arguments quickly reveals.  In each instance,

the statutory arguments raised pursuant to §§6230(c), 6223 and 6224 are cut off entirely in the

absence of acceptable proof that the amended 2004 partnership return of Fountain Holding was

filed with the IRS.

   For example, the Shirleys' argument that Steve Shirley, as TMP for Fountain

Holding, during the course of his tax court proceedings, entered into a settlement that involved

the 2004 NOL of Fountain Holding necessarily rests on the critical assumption that this

partnership NOL was then officially before the Service for consideration at the partnership level.

Given the absence of any acceptable proof that the amended 2004 partnership return was actually

filed, the NOL that is the basis for the Shirleys' present refund claim simply was not before the Service for consideration at the partnership level.  In other words, a settlement with Steve Shirley at most involved only his own individual partner claim, not a partnership level resolution of a partnership item, since the NOL, as a partnership item, was never before the Service.

Further, the audit of Steve Shirley involved his own amended 2002 individual tax return, IRS Form 1040X, not an amended partnership return such as the missing 2004 amended partnership return for Fountain Holding.  The Shirleys' argument to the contrary notwithstanding, the settlement that occurred in the course of Steve Shirley's tax court proceedings, which arose out of the audit, therefore did not and could not conclusively be said to have involved the 2004 NOL carry back of Fountain Holding when no 2004 amended partnership return containing such NOL was filed in the first instance.

Yet another problem confronts the Shirleys in their efforts to rely on §6230(c)(1)(A) and (B), even if the settlement with Steve Shirley is assumed to have involved the 2004 NOL carry back of Fountain Holding, despite there being no acceptable proof that Fountain Holding filed an amended 2004 partnership return claiming such a NOL.  The problem is found directly in the language of §6230(c)(2)(B).  This subsection establishes the time for filing a claim based on such a settlement.  It unequivocally states that any claim under §6230(c)(1)(B) "shall be filed within two years *after* ... the day on which the settlement is entered into...."  26 U.S.C. §6230(c)(2)(B)(i)(emphasis added).

We are bound to read the statute in light of the plain language of the words employed therein.  *See Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102 (1980) (When interpreting a statute the court looks to the plain language of the words in the

statute, which are deemed conclusive absent clearly expressed legislative intent to the contrary); *Rigas*, 2011 WL 1655579 at *7 n.3.  Given the plain language of §6230(c)(2)(B), the Shirleys had from July of 2007, when the IRS settled with Steve Shirley, until July of 2009, to file their refund claim for their 2002 tax year.  Instead, the Shirleys filed their second amended 2002 return on Jan. 11, 2006, 18 months *before* the settlement even occurred.  Thus, their refund claim based on the subsequent settlement did not satisfy the time for filing requirements of §6230(c)(2)(B)(i).

The efforts of the Shirleys to sidestep TEFRA and §7422(h) by arguing that the 2004 NOL carry back is an "affected item," rather than a partnership item, also are doomed to failure given the absence of any acceptable proof of the filing of the amended 2004 partnership return for Fountain Holding.  This conclusion is unavoidable.  An affected item cannot exist under 26 U.S.C. §6231(a)(5) except to the extent that such item is "affected by a partnership item."[15]  In other words, until there is shown to be a partnership item that affects the contested item, such item cannot by statutory definition be an affected item.

Because no amended 2004 partnership return for Fountain Holding was filed with the IRS, the 2004 NOL cannot be an affected item.  *See Maxwell v. Comm't*, 87 T.C. 783 (1986) (affected items depend on partnership level determinations and must await the outcome of the partnership level proceeding).  No partnership level proceeding involving the claimed 2004 NOL of Fountain Holding was ever held.  The carry back of the 2004 NOL for Fountain Holding therefore cannot be an affected item as the validity of the 2004 partnership NOL must first be

---

[15]  Under 26 U.S.C. §6231(a)(5), and affected item is defined to mean "any item to the extent such item is affected by a partnership item."  *Id*.

30

determined at the partnership level rather than by a individual partner in a refund lawsuit.  Once

again, because the Shirleys cannot prove that an amended 2004 partnership return for Fountain

Holding was filed with the Service, their affected item argument is lost.

        The Court reaches the same conclusion with respect to the Shirleys' §6223 failure

to notify argument.  The Shirleys are correct that under §6223 the IRS is required to notify

partners of an administrative proceeding at the partnership level with respect to a partnership

item.  See 26 U.S.C. §6223(a)(1) and (2).  They are also correct that under §6223(c)(2),[16] if the

Secretary does not timely mail notice of the final partnership administrative adjustment or court

decision, then the adversely affected partner may elect to have the adjustment, court decision or

settlement described in §6224(c)(2) apply to him.  Here, however, no administrative proceeding

---

[16] **26 U.S.C. § 6223(c)(2)** provides that -

**(e)**     **Effect of Secretary's failure to provide notice** - -

**\* \* \* \***

    **(2)**    **Proceedings finished**. - - In any case to which this subsection applies, if at the
           time the Secretary mails the partner notice of the proceeding - -

         (A)    the period within which a petition for review of a final partnership
              administrative adjustment under section 6226 may be filed has expired
              and no such petition has been filed, or

         (B)    the decision of a court in an action begun by such a petition has become
              final,

    the partner may elect to have such adjustment, such decision, or a settlement
    agreement described in paragraph (2) of section 6224(c) with respect to the
    partnership taxable year to which the adjustment relates apply to such partner.  If
    the partner does not make an election under the preceding sentence, the
    partnership items of the partner for the partnership taxable year to which the
    proceeding relates shall be treated a nonpartnership items.

at the partnership level involving a partnership item could have taken place; nor was there a final

partnership administrative adjustment.  Neither of these events could have occurred because

Fountain Holding never filed an amended 2004 partnership return claiming the NOL now at

issue.

Certainly, the amended 2002 Form 1040X filed by Steve Shirley was not in any

fashion the substantial equivalent of a request for an administrative adjustment on behalf of the

Fountain Holding partnership under 26 U.S.C. §6227(c).  The  Shirleys cite no federal decision

which stretches the doctrine of substantial equivalence so much so that an amended individual

tax return may constitute the substantial equivalent of an AAR on behalf of a *partnership*.  Thus,

while perhaps an open question might exist on whether a given partner's IRS Form 1040X

amended return may be the substantial equivalent of an AAR for that partner, none of the

decisions cited by either party indicate that an amended individual tax return can be the

equivalent of an AAR on behalf of a partnership entity.  Because Fountain Holding never filed

an amended 2004 partnership return that claimed the disputed NOL, Steve Shirley as TMP did

not file an AAR on behalf of the partnership, but merely the substantial equivalent of an AAR on

his own behalf as a partner at most .[17]

---

[17]   The Court acknowledges the split among the circuits on whether a Form 1040X
amended return may be the substantial equivalent of an AAR.  The Court has examined *Wall v.
United States*, Case No. 94-56541, 1996 WL 219611 (9th Cir. 1996) and *Rigas v. United States*,
Case No. H-09-3770, 2011 WL 1655579 at *8-10 (S.D. Tex. May 2, 2011).  Neither decision in
the Court's view establishes a firm foundation for the creation of a substantial compliance
doctrine in the Sixth Circuit.
        *Wall* is a one-page decision that makes repeated reference to "the peculiar facts of this
case."  *Wall,* 1996 WL 219661 at *1.  The decision nowhere discusses the plain language of the
regulation that requires that IRS Form 8082 be filed when a taxpayer seeks to make an AAR.
See 26 C.F.R. 301.6227(d)-1.  The *Rigas* decision in contrast contains a more detailed discussion
of substantial compliance in the context of an administrative adjustment request.  *Rigas*, 2011

For much the same reasons, §6224(c)(2) offers the Shirleys no refuge.  The statute does require the IRS to offer consistent settlement terms to those that are contained in a settlement agreement when a partner "so requests."  Once again, however, the problem is that §6224 applies only to "partnership items."  While an NOL is indeed a partnership item, the provisions of 26 C.F.R. §301.62224(c)-3 require that the affected partner make his request within 60 days *after* the date of the settlement.  The Shirleys did not request consistent treatment within the regulatory deadline.  They instead claim that this regulatory deadline remains open because they did not receive a notice of settlement.  Yet, 26 U.S.C. §6224 contains absolutely no language that would require the IRS to provide the Shirleys with notice of its settlement with Steve Shirley contrary to the nature of the other, above-cited sections of TEFRA that do indeed contain explicit notice rules for the IRS.

Given the absence of any notice requirement in 26 U.S.C. §6224(c), the Court is loathe to judicially create one, particularly when the TMP Steve Shirley was fully capable of notifying the other Fountain Holding partners of events involving his settlement during the course of the tax court proceedings.  See 26 U.S.C. §6223(g) (tax matters partner of a partnership

---

WL 1655579 at *10.  In doing so, however, *Rigas* adopts the substantial compliance law of the Fifth Circuit, which holds that "substantial compliance is achieved where the regulatory requirement at issue is unclear and a reasonable taxpayer acting in good faith and exercising due diligence nevertheless fails to meet it."  *Id*. (citing *Estate of McAlpine v. Comm'r*, 968 F.2d 459, 462 (5th Cir. 1992)).

　　The regulation at issue here is not unclear.  Also, the Shirleys have not shown that they exercised due diligence in attempting to meet the plain language of 26 C.F.R. 301.6227(d)-1. Thus, the doctrine of substantial compliance as set forth in *Rigas* would not seem to be helpful to their cause even were this Court to adopt it now.  Strict compliance would seem the more prudent approach given the unequivocal language of the regulation.  *See, Hamdan v. United States*, Case No. 02-384T, 2009 WL 612326 (Fed. Cl. Mar. 9, 2009); *Rothstein v. United States,* Case No. 97-647T, 1998 WL 331582 (Fed. Cl. May 15, 1998).

shall keep each partner informed of all administrative and judicial proceedings for the adjustment at the partnership level of partnership items).

## CONCLUSION

The Shirleys in their legal writing and oral argument rely on the theme of similar treatment.  They want to know why they did not receive the refund for their claimed 2004 NOL carry back from Fountain Holding as did Steve Shirley.[18]  TEFRA does indeed promote a legislative policy of uniform treatment.  The items to be uniformly treated, however, are partnership items at the partnership level. TEFRA does not guarantee that every individual partner will receive the same treatment on his or her individual tax returns.[19]  Because the Shirleys have offered no acceptable proof that an amended 2004 partnership return for Fountain Holding was ever filed with the IRS, no partnership level proceeding was ever held to determine the validity of the 2004 NOL of Fountain Holding.  Consequently, the dismissal of the Shirleys' present tax refund lawsuit based on their failure to establish the subject matter jurisdiction of the Court is not contrary to the purposes of TEFRA.  Dismissal, rather, is required in light of *Stocker*, *Miller*, *Surowka*, *Schentur, BMC Bankcorp, Cope* and *Carroll*.  Accordingly, the Court

---

[18]  During oral argument counsel for the Shirleys also made reference to another apparent family member, Darren Shirley, who also received a refund based on the same 2004 NOL carry back from Fountain Holding.  Nowhere in any of the motion papers is a Darren Shirley mentioned.  Nevertheless, in accordance with its obligation under Rule 12(b)(1), the Court assumes the truth of this representation that another Shirley family member, Darren, also received a tax refund based on the 2004 NOL carry back from Fountain Holding.

[19]  *Rigas*, 2011 WL 1655579 at *8 ("The IRS is not bound to accept or allow an individual taxpayer's 1040X refund claim merely because similar refund claims by other taxpayers, or by the plaintiff himself were allowed.").

shall by separate order dismiss the present lawsuit with prejudice.

Copies to Counsel of Record